IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **KATHERINE SWEENEY**, | § |
| | § |
| **Plaintiff**, | § Case No. 4:25-cv-00392-O |
| | § |
| v. | § |
| | § |
| **ASSOCIATION OF INDEPENDENT MORTGAGE EXPERTS,** | § |
| | § |
| **Defendant**. | § |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Association of Independent Mortgage Experts ("Defendant" or "AIME"), as and for its Answer, Affirmative Defenses, and Counterclaims to Plaintiff Katherine Sweeney's ("Plaintiff" or "Ms. Sweeney") Original Petition ("Petition"),[1] states and alleges as follows:

### ANSWER

1. Defendant denies each and every allegation, matter and thing set forth in Plaintiff's Petition unless otherwise admitted or qualified herein.

2. Defendant is without sufficient information to admit or deny the averments and allegations contained in Paragraph 1.1 of Plaintiff's Petition and therefore denies the same and puts Plaintiff to her strictest burden with respect thereto.

3. Defendant admits the averments and allegations contained in Paragraph 1.2 of Plaintiff's Petition as they relate to Defendant being a non-profit corporation formed pursuant to the laws of Michigan and having a registered office address of 6978 Dixie Highway, Suite B,

---

[1] Plaintiff commenced this action in state court by filing the Original Petition in the 48th District Court in and for Tarrant County, Texas, on or about February 28, 2025.  On April 10, 2025, AIME removed the action to Federal Court.  *See, generally*, ECF No. 1. Where appropriate, AIME refers to the Texas state court pleadings using the caption given them by Plaintiff.

Clarkston, Michigan 48346. As for the remaining averments and allegations contained in Paragraph 1.2 of Plaintiff's Petition, Defendant denies each and every one of them and puts Plaintiff to her strictest burden with respect thereto.

4. The averments and allegations contained in Paragraph 2.1 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 2.1 is deemed to state a factual allegation requiring admission or denial, Defendant further affirmatively states that the jurisdictional requirements of the District Court for Tarrant County are no longer relevant as the matter has been removed to Federal Court. Defendant admits that the amount in controversy exceeds the minimum jurisdictional requirements for diversity jurisdiction. Except as explicitly admitted, Defendant denies any remaining allegation in Paragraph 2.1 of Plaintiff's Petition.

5. The averments and allegations contained in Paragraph 2.2 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 2.2 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations and puts Plaintiff to her strictest burden with respect thereto. Defendant further notes that the provisions of Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) are not controlling on this Court and has no further relevance to this action in light of the removal.

6. Defendant is without sufficient information to admit or deny the averments and allegations contained in Paragraph 3.1 of Plaintiff's Petition and therefore denies the same and puts Plaintiff to her strictest burden with respect thereto. Defendant further notes that the provisions of the Texas Rules of Civil Procedure are not controlling on this Court and has no further relevance to this action in light of the removal.

7. The averments and allegations contained in Paragraph 4.1 of Plaintiff's Petition constitute legal conclusions to which no admission or denial is required. To the extent Paragraph 4.1 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations and puts Plaintiff to her strictest burden with respect thereto. Defendant further notes that the provisions of the Texas Rules of Civil Procedure are not controlling on this Court and has no further relevance to this action in light of the removal.

8. With respect to the averments and allegations contained in Paragraph 5.1 of Plaintiff's Petition, Defendant admits that it is a nationwide trade organization for independent mortgage experts, denies that Plaintiff served as its CEO, denies that it entered into the Agreement referenced in Paragraph 5.1, and denies that any such Agreement is valid or enforceable. To the extent that the averments and allegations contained in Paragraph 5.1 are inconsistent with, contrary to, or not addressed herein, Defendant denies each and every one of them and puts Plaintiff to her strictest burden with respect thereto.

9. With respect to the averments and allegations contained in Paragraph 5.2 of Plaintiff's Petition, Defendant admits the averments and allegations contained in Paragraph 5.2 as to AIME making nine (9) monthly installment payments each in the amount of $20,000—a total of $180,000—to Plaintiff. As to the remaining averments and allegations contained in Paragraph 5.2 of Plaintiff's Petition, Defendant denies each and every one of them and puts Plaintiff to her strictest burden with respect thereto.

10. Defendant is without sufficient information to admit or deny the averments and allegations contained in Paragraph 5.3 of Plaintiff's Petition and therefore denies the same and puts Plaintiff to her strictest burden with respect thereto.

11. Defendant is without sufficient information to admit or deny the averments and allegations contained in Paragraph 5.4 of Plaintiff's Petition and therefore denies the same and puts Plaintiff to her strictest burden with respect thereto. Subject to and without waiver of this denial, Defendant admits that it received a letter via electronic mail from an attorney purporting to represent Plaintiff on or about January 27, 2025. That letter speaks for itself, and, to the extent that Paragraph 5.4 conflicts with the contents of the letter, those allegations are denied.

12. With respect to the averments and allegations contained in Paragraph 5.5 of Plaintiff's Petition, Defendant admits that it responded through counsel to the letter received on January 27, 2025. The contents of that response speak for themselves and, to the extent that the allegations in Paragraph 5.5 differ from the contents of the letter, the same are denied. Defendant further affirmatively states that Plaintiff never replied to Defendant's letter, instead filing this lawsuit.

13. In response to Paragraph 6.1 of Plaintiff's Petition, Defendant realleges and reincorporates all of its responses to the averments and allegations contained in the Paragraphs preceding Paragraph 6.1 of Plaintiff's Petition as though fully set forth herein.

14. The averments and allegations contained in Paragraph 7.1 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 7.1 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations.

15. The averments and allegations contained in Paragraph 8.1 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 8.1 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations.

16. The averments and allegations contained in Paragraph 9.1 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 9.1 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations. Defendant further notes that the provisions of the Texas Rules of Civil Procedure are not controlling on this Court and has no further relevance to this action in light of the removal.

17. The averments and allegations contained in Paragraph 10.1 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 10.1 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations. Defendant further notes that the provisions of the Texas Civil Practice & Remedies Code are not controlling on this Court and has no further relevance to this action in light of the removal.

18. The averments and allegations contained in Paragraph 11.1 of Plaintiff's Petition constitute legal conclusions to which no response is required. To the extent Paragraph 11.1 is deemed to state a factual allegation requiring admission or denial, Defendant denies these allegations. Defendant further notes that the provisions of the Texas Rules of Civil Procedure are not controlling on this Court and has no further relevance to this action in light of the removal.

19. In response to Section 12 of Plaintiff's Petition entitled "**PRAYER**", Defendant denies that Plaintiff is entitled to any of the relief requested therein.

## AFFIRMATIVE DEFENSES

As and for Defendant's affirmative defenses, Defendant states and alleges as follows:

1. Plaintiff's Petition fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to articulate Plaintiff's claims with sufficient particularity.

3. Plaintiff's claims are barred in their entirety since Plaintiff seeks to enforce a contract that is void ab initio.

4. The claims put forth in Plaintiff's Petition are barred by the doctrines of waiver and estoppel, accord and satisfaction, unclean hands, unjust enrichment, license, ratification, and justification.

5. Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of laches.

6. Plaintiff's claims are barred due to prior breach or breaches of contract or failure of conditions precedent.

7. Plaintiff's claims are barred due to illegality.

8. Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, are a direct or proximate result of Plaintiff's own action, inaction, conduct, or performance, and in violation of her fiduciary duties that she owed to the Defendant.

9. Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, are a direct or proximate result of the actions, conduct or performance of third parties over whom Defendant has no control.

10. Plaintiff's claims are barred, in whole or in part, because Defendant's conduct, acts, and omissions were not the proximate cause of Plaintiff's damages.

11. Plaintiff's claims are barred, in whole or in part, because Plaintiff suffered no compensable damages.

12. Defendant preserves any and all additional affirmative defenses available under Rule 8(c) of the Federal Rules of Civil Procedure, which may be asserted or discovered in discovery in this matter.

**COUNTERCLAIMS**

Defendant, as and for its counterclaims against Plaintiff, states as follows:

**I.  AIME**

1. On February 5, 2018, AIME was incorporated when it filed its Articles of Incorporation with the Michigan Department of Licensing and Regulatory Affairs ("LARA").

2. On February 8, 2018, AIME filed Amended Articles of Incorporation with LARA.

3. On or about November 7, 2018, the Department of Treasury, Internal Revenue Service ("IRS") issued its determination that AIME qualified as a non-profit organization under Section 501(c)(3) of the Internal Revenue Code, effective February 5, 2018.

4. On December 10, 2019, AIME filed its 2019 Annual Report with LARA, identifying the following Officers and Directors:

   a. Marc Summers ("Mr. Summers") (President, Treasurer, Secretary, and Director);

   b. Stephanie Gray ("Ms. Gray") (as Secretary);

   c. Anthony Casa (as Director); and

   d. Ms. Sweeney (as Director).

5. On September 3, 2020, and September 29, 2021, AIME certified to LARA that there had been no changes in the required information since the filing of the previous Annual Report.

6. On August 30, 2022, AIME filed its 2022 Annual Report with LARA, identifying the following Officers and Directors:

   a. Mr. Summers (as President, Treasurer, and Director);

   b. Ms. Gray (as Secretary);

   c. Ms. Sweeney (as Director); and

    d.  Karis Koehn ("Ms. Koehn") (as Director).[2]

7. On September 29, 2023, and August 21, 2024, AIME certified to LARA that there had been no changes in the required information since the 2022 Report had been filed.

8. Beginning with its 2021 IRS Form 990, AIME identified three individuals under Part VIII, Section A as officers or directors: Mr. Summers (as President), Ms. Sweeney (as Chairman), and Ms. Koehn (as Director). Each of the three were identified as receiving compensation from AIME, in an amount ranging from $120,833 (for Mr. Summers) to $240,000 (for Ms. Sweeney). Of the three, only Ms. Sweeney is listed on Schedule J.

9. Mr. Summers, Ms. Sweeney, and Ms. Koehn were similarly the only individuals listed under Part VIII, Section A as officers or directors on AIME's 2022 IRS Form 990. Mr. Summers and Ms. Koehn reported similar compensation as the previous year, while Ms. Sweeney's compensation nearly doubled to $479,990 on an average of thirty (30) hours per week. As with 2021, only Ms. Sweeney is listed in AIME's 2022 Schedule J.

10. According to AIME's Bylaws, AIME's Board of Directors consisted of, in part, the President and Chairman. A copy of AIME's Bylaws are attached hereto and incorporated herein as Exhibit A.

11. As Director and Chairman, Ms. Sweeney owed fiduciary duties of loyalty and care to both AIME and its members.

12. From 2018 through the present, AIME's Bylaws have prohibited payment of compensation to Directors for their service on the Board of Directors.

13. From 2018 through May 2024, AIME's Bylaws prohibited payment of compensation to the Chairman. AIME adopted amended Bylaws on May 21, 2024, that permitted

---

[2] In certain documents, Ms. Koehn's name is misspelled as "Kohen." In this Answer, AIME treats the misspelling as a scrivener's error, and corrects the spelling to "Koehn" without further comment.

compensation to Officers as approved by the Board of Directors, determined using a process that includes a review and approval by independent persons. These limitations were never followed as related to Ms. Sweeney. A copy of the Amended Bylaws is attached hereto as Exhibit B.

## II.     The Transition Agreement

14. On or about January 16, 2024, Ms. Sweeney executed a document captioned Transition Agreement and Mutual Release (the "Transition Agreement"), a true and correct copy of which is attached as **Exhibit C** hereto.

15. The Transition Agreement was also signed by Mr. Summers, AIME's President, at around the same time. Mr. Summers signed the Transition Agreement at Ms. Sweeney's direction and insistence as the Chairman, and while Mr. Summers is noted on the face of the Transition Agreement as AIME's "authorized representative," the Transition Agreement was never presented to nor approved by a vote of AIME's Board of Directors.

16. Under Paragraph 1 of the Transition Agreement, Ms. Sweeney resigned "her employment" with AIME, effective March 31, 2024.

17. Under Paragraph 2 of the Transition Agreement, AIME purportedly acknowledged that Ms. Sweeney had earned a bonus in the amount of $240,000 (the "2023 Bonus") and purportedly agreed to pay the 2023 Bonus no later than February 29, 2024. The Transition Agreement does not provide any detail on how the 2023 Bonus was calculated, what metrics were considered in determining whether Ms. Sweeney had "earned" the 2023 Bonus, or any additional details.

18. Under Paragraph 3 of the Transition Agreement, AIME purportedly agreed to pay Ms. Sweeney the sum of $240,000 (the "Alleged Severance Payment") in twelve (12) monthly installments of $20,000 each, beginning April 15, 2024.

19. While the Transition Agreement refers to Ms. Sweeney as an "Employee," this is a misnomer. At the time the Transition Agreement was executed, Ms. Sweeney was not an "employee" of AIME, but rather a Director and Officer.

20. AIME's Board of Directors did not, either contemporaneously or after the fact, approve of the Transition Agreement. Rather, it appears that the Transition Agreement was unilaterally prepared and drafted by Plaintiff, negotiating her own purported exit package from AIME, and presented to Summers with a demand for signature.

21. Plaintiff left AIME at the end of March 2024, and has not served as either an Officer or Director of Defendant since that time.

## COUNTERCLAIM COUNT I
### (Declaratory Judgment: Transition Agreement)

22. Defendant repeats, reiterates, and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

23. Under Michigan law, payment of salary to an officer or director is not strictly prohibited, but must comply with the nonprofit's articles of incorporation and bylaws.

24. At all times while Ms. Sweeney was an officer and director of AIME, AIME's Bylaws prohibited payment of compensation (as opposed to reimbursement for expenses actually incurred) to officers and directors.

25. Paragraphs 2 and 3 of the Transition Agreement violate AIME's Bylaws and, by extension, Michigan statute.

26. Under Michigan law, nonprofit corporations (such as AIME) may take action either by a vote during a meeting or by written action (unless prohibited by the articles of incorporation or bylaws) if all members of the board of directors consent to the action in writing and the written action is filed with the other minutes of the nonprofit corporation.

27. The Transition Agreement was not approved by vote of the Board of Directors at a meeting.

28. AIME's Bylaws at the time permitted the Board of Directors to take action without a meeting if both the Chairman and President adopt a written resolution authorizing the action *and* that written action is filed with the minutes of the proceedings of AIME's Board of Directors. There was no written resolution adopted by the Chairman and President authorizing the Transition Agreement, and no such written action was filed with the minutes of the proceedings of AIME's Board of Directors.

29. As required by TEX. CIV. PRAC. & REM. CODE § 37.006, all persons or entities who have or claim any interest that would be affected by a declaration of the validity (or lack thereof) of the Transition Agreement are parties to this action.

30. Accordingly, AIME is entitled to a declaration under the Uniform Declaratory Judgments Act, codified at Chapter 37 of the Texas Civil Practice and Remedies Code, that the Transition Agreement (specifically but not limited to the payment provisions in Paragraphs 2 and 3 and the purported release in Paragraph 5) is void *ab initio* and *ultra vires*, that the Transition Agreement is rescinded, and that AIME is entitled to a complete accounting of any amounts paid to Ms. Sweeney in connection with the Transition Agreement.

## COUNTERCLAIM COUNT II
### (Breach of Fiduciary Duties)

31. Defendant repeats, reiterates, and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

32. Dating at least as far back as 2021, Plaintiff has, among other things, received compensation from Defendant either as an officer or as a director, despite the fact that Defendant's Bylaws specifically prohibited her from receiving such compensation.[3]

33. As an officer and director of Defendant, Plaintiff owed Defendant and its members a duty of loyalty and care, including a duty to act in good faith, a duty to act with the care of an ordinarily prudent person in a like position exercising such care under similar circumstances, and a duty to act in a manner reasonably believed to be in the best interests of the corporation.

34. By awarding herself a salary and bonus, and by drafting and demanding that the Transition Agreement be signed by Defendant, and by accepting compensation to which she was not entitled – and in fact was prohibited from receiving – Plaintiff breached her fiduciary duties to AIME.

35. At no time did Plaintiff seek Board approval or approval from any outside disinterested party. Instead, contrary to Defendant's Bylaws, she engaged in self-serving conduct that directed payments of over $900,000 to her personally. These payments were contrary to the internal and governing documents of the Defendant, as applied to the Plaintiff, and should be clawed back.[4]

---

[3] The 2018 By-Laws specifically provided that as Chairman, Plaintiff was not entitled to compensation.

[4] While not intended to be an exhaustive list of Plaintiff's self-dealing, in 2024 (after Ms. Sweeney's departure), AIME learned that, over a two-year time span, Ms. Sweeney had used AIME personnel, administrative tools and resources, and access to data on AIME's members to craft, invoice, and collect on for-profit contracts between third-party organizations on the one hand and companies in which Ms. Sweeney held a vested interest on the other. For example, while serving as Director and Chairman of AIME, Ms. Sweeney engaged in contracts with AIME vendors and Brokers are Better, LLC ("BAB") – now known as BAB Management, LLC, which does business as The Mortgage Xchange

36.     As a result of Plaintiff's breach of her fiduciary duties to Defendant, Defendant has been damaged in an amount to be determined at trial, but believed to be in excess of $75,000, exclusive of interest, costs, and fees as more fully articulated below:

   a. At least $240,000 in compensation received by Plaintiff in 2021;

   b. At least $479,999 in compensation received by Plaintiff in 2022;

   c. Any amount received as compensation by Plaintiff in 2023; and

   d. Any amount received as compensation by Plaintiff in 2024.

### COUNTERCLAIM COUNT III
### (Unjust Enrichment)

37.     Defendant repeats, reiterates, and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

38.     Through receipt of compensation for her role as either an officer or director of Defendant, Plaintiff was conferred a benefit of which she was fully aware.

39.     Plaintiff retained the monies paid to her as compensation despite her knowledge that such compensation was not permitted (and, in fact, was prohibited) by Defendant's Bylaws.

40.     Allowing Plaintiff to retain the payments made to her would be inequitable.

---

– a Maryland limited liability company of which she was a member. On information and belief, Ms. Sweeney led at least two (2) entities that entered into a contract with BAB to believe that they were in fact contracting with AIME, and those entities were surprised to learn that money paid under those contracts was not received by AIME. After Ms. Sweeney's departure from AIME, AIME learned of a document purportedly signed by Koehn on behalf of AIME and Ms. Sweeney on behalf of BAB in January 2022, that purportedly requires AIME to promote BAB and provide it with exclusive vendor discounts and membership benefits over a ten-year period without any payment from BAB to AIME (the "Sponsorship Agreement"). As with the Transition Agreement, neither the Board nor a disinterested majority thereof ever formally approved of the Sponsorship Agreement. Additionally, while serving as a Director and Chairman of AIME, Ms. Sweeney founded Broker Action Coalition, Inc. ("BAC"), a Delaware corporation, and ran BAC parallel with AIME to negotiate contracts with lender partners that diverted monetary contributions away from AIME to BAC. These intrusions and diversion of opportunity continue as Plaintiff has created a mechanism to divert internet traffic from AIME to websites that are under her control, giving the user, upon information and belief, the false impression that it is interfacing with AIME. Despite repeated requests for this practice to cease, Plaintiff has refused.

41. As a result of these inequitable circumstances, Defendant has been damaged in an amount to be determined at trial, but believed to be in excess of $75,000, exclusive of interest, costs, and fees as more fully articulated below:

    e. At least $240,000 in compensation received by Plaintiff in 2021;

    f. At least $479,999 in compensation received by Plaintiff in 2022;

    g. Any amount received as compensation by Plaintiff in 2023; and

    h. Any amount received as compensation by Plaintiff in 2024.

## PRAYER FOR RELIEF

**WHEREFORE**, AIME respectfully requests relief from this Court as follows:

1. Declare pursuant to the Uniform Declaratory Judgments Act that the Transition Agreement is void *ab initio* and *ultra vires*;

2. Declare pursuant to the Uniform Declaratory Judgments Act that the Transition Agreement be rescinded in full;

3. Order a complete accounting of all amounts paid to Ms. Sweeney by AIME in connection with the Transition Agreement;

4. Order that all amounts paid to Ms. Sweeney by AIME in connection with the Transition Agreement be returned to AIME;

5. That judgment be entered in favor of AIME against Ms. Sweeney in an amount to be determined at trial but in excess of $75,000 (exclusive of interest, costs, and disbursements) for AIME to recoup the compensation impermissibly paid to Ms. Sweeney;

6. Award AIME its fees and costs (including reasonable attorney fees) to the fullest extent permitted by law; and

7. Such other relief as the Court may determine just and warranted.

<table>
<tr><td></td><td>Respectfully Submitted,<br><br>**SUSSMAN & MOORE, L.L.P.**<br><br>/s/ Weldon L. Moore, III<br>Weldon L. Moore, III<br>(TX Bar No. 14380500)<br>2911 Turtle Creek Blvd. Ste. 1100<br>Dallas, Texas 75219<br>Telephone: (214) 378-8270<br>Fax: (214) 378-8290<br>wmoore@csmlaw.net<br><br>  -and-<br><br>**MADIGAN, DAHL & HARLAN, P.A.**</td></tr>
<tr><td>Dated: April 17, 2025</td><td>Thomas P. Harlan, *pro hac vice* forthcoming<br>Christopher W. Bowman, *pro hac vice* forthcoming<br>Trenton K. Seegert, *pro hac vice* forthcoming<br>33 South Sixth Street, Suite 3675<br>Minneapolis, MN 55402<br>Phone: 612-604-2000<br>harlan@mdh-law.com<br>bowman@mdh-law.com<br>seegert@mdh-law.com<br><br>  -and-<br><br>**DROEL, PLLC**<br><br>Tim L. Droel (TX Bar No. 24075548), admission in Northern District of Texas pending<br>Evan H. Weiner, (MN Bar No. 389176), *pro hac vice* pending<br>5625 F.M. 1960 West, Suite 214<br>Houston, TX 77069<br>Phone: (832) 701-9905<br>tdroel@droellaw.com<br>eweiner@droellaw.com<br><br>*Attorneys for Defendant Association of Independent Mortgage Experts*</td></tr>
</table>

**CERTIFICATE OF SERVICE**

      I certify that this document was served on all counsel of record via the Court's ECF system on April 17, 2025.

                                        /s/ Weldon L. Moore, III
                                        Weldon L. Moore, III