# TRANSITION AGREEMENT AND MUTUAL RELEASE

This Transition Agreement and Mutual Release ("**Agreement**") is entered into by and between Katherine Sweeney ("**Employee**"), and the Association of Independent Mortgage Experts, a Michigan non-profit corporation, on behalf of itself, its officers, directors, shareholders, employees, and agents (singularly and collectively, referred to herein as "**Employer**"). The Agreement is effective as of January 15, 2024 ("**Effective Date**").

1. **Termination of Employment**. Employee agrees that she has resigned her employment with Employer, effective March 31, 2024, which date will be deemed the "**Termination Date**."

2. **Acknowledgement of, and Agreement to Pay, 2023 Bonus**. Employer acknowledges that Employee has earned her 2023 Bonus in the amount of $240,000, and Employer agrees to pay to Employee her 2023 Bonus in the amount of $240,000 no later than February 29, 2024. Employee agrees that Employer may withhold payroll taxes and any other sums required by federal or state law from Employee's 2023 Bonus.

3. **Severance Payment**. In consideration of the release of all claims by Employee as provided for in this Agreement, and the other agreements made by Employee herein, Employer will pay Employee the sum of $240,000 (the "**Severance Payment**"). Employer shall pay Employee the Severance Payment on a monthly basis over twelve (12) months, commencing with a $20,000 payment on April 15, 2024, and continuing with a $20,000 payment being made on the fifteenth (15th) day of each month thereafter until the Severance Payment is paid in full by no later than March 15, 2025. Employee agrees that Employer may withhold payroll taxes and any other sums required by federal or state law from Employee's Severance Payment.

4. **Employer to Pay Employee's Health Insurance Cost through December 31, 2024**. Employer shall pay Employee's health insurance coverage under the Consolidated Omnibus Reconciliation Act of 1985, as amended ("**COBRA**"), by payment of Employee's COBRA premiums for the period from April 1, 2024, through December 31, 2024, such that Employee continues to have uninterrupted overage under Employer's health insurance benefit plan and program. Thereafter, Employee will be responsible for any COBRA premiums should Employee choose to continue COBRA coverage after December 31, 2024. In the event Employer does not qualify for any reason for COBRA, or COBRA is otherwise inapplicable or unavailable, Employer shall pay Employee's insurance premiums for any state-provided health insurance program or individual health insurance program to which Employee subscribes, through December 31, 2024.

5. **Mutual Release and Waiver of Claims**. Employee and Employer agree to mutually release and waive any and all claims either may have against the other as provided hereafter.

    5.1    **"Released Party"** means:

        (a) for the Employer's release and waiver, the Employee, and

        (b) in connection with the Employee's release and waiver, each of the Employer, any of its employees, and officers.

    5.2    Save and except as to any claims or obligations set forth in this Agreement, and in exchange for the consideration provided in this Agreement, each of the Employer and the Employee (in this capacity, each a "**Releasor**") irrevocably and unconditionally fully and forever waives, releases, and discharges each applicable Released Party, as defined above, from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown (collectively, "**Claims**"), that the Releasor may have or have ever had against such Released Party arising out of, or in any way related to Employee's employment, termination, or separation from employment with Employer by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the Effective Date.

    5.3    This general release and waiver of Claims excludes, and neither Party waives, releases, or discharges: (a) any right to file an administrative charge or complaint with, or testify, assist, or participate in an investigation, hearing, or proceeding conducted by, the Equal Employment Opportunity Commission or other similar federal or state administrative agencies; (b) Claims that cannot be waived by law, such as Claims for unemployment benefit rights and workers' compensation; (c) protections against retaliation under the Taxpayer First Act (26 U.S.C. § 2623(d)); and (d) any rights to vested benefits, such as pension or retirement benefits, the rights to which are governed by the terms of the applicable plan documents and award agreements. By signing this Agreement, neither Party waives any rights set forth in this Agreement or any Claims that a Party may have which arise after the Effective Date.

    5.4    This Agreement is intended to be effective as a general release of and bar to all Claims as stated in this Section. Each Party acknowledges that the Party may later discover Claims or facts in addition to or different from those which the Party now knows or believes to exist with regards to the subject matter of this Agreement, and which, if known or suspected at the time of executing this Agreement, may have

materially affected its terms. Nevertheless, each Party waives any and all Claims that might arise as a result of such different or additional Claims or facts.

6. **No Admission.** Nothing in this Agreement shall be construed as an admission by either Party of any wrongdoing, liability, or noncompliance with any federal, state, city, or local rule, ordinance, statute, common law, or other legal obligation.

7. **Mutual Non-Disparagement**.

    7.1   Employer agrees that it will not (and will use reasonable efforts to cause its directors and officers not to), in the course of any authorized internal or external communication, make a disparaging statement about Employee, or Employee's business practices, or the services provided by Employee to Employer, now or in the future.

    7.2   Employee shall not make a disparaging statement about any individual or entity that is part of Employer or any of Employer's businesses, products, and services, now or in the future.

    7.3   For purposes of this paragraph, a disparaging statement is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates.

    7.4   This Section does not, in any way, restrict or impede Employee from exercising protected rights, including rights under New York law, the National Labor Relations Act (NLRA), or the federal securities laws, including the Dodd-Frank Act, to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. Nothing in this Agreement prevents Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that Employee has reason to believe is unlawful.

8. **Confidentiality of Agreement**. Employer and Employee agree to maintain the strict confidentiality of the existence and terms of this Agreement and the underlying facts leading up to the existence or substance of this Agreement, including the Severance Payment described hereinabove, except disclosure may be made: (i) as necessary for a Party to enforce any term or condition of this Agreement; (ii) to a Party's attorneys, accountants, or tax advisors; or (iii) as otherwise required by law or judicial or administrative process.

9. **Continued cooperation.** Employee agrees that through the period ending at the Termination Date, Employee will comply with all reasonable requests for information made by or on behalf of Employer with respect to Employer's operations and any projects and responsibilities of Employee existing as of the Termination Date, including assistance in transitioning Employer to a new CEO. Employee also agrees to prospectively execute any and all documents necessary to accomplish the intent and purposes of this Agreement.

10. **Miscellaneous provisions.** Employer and Employee acknowledge and agree to the following provisions as part of this Agreement:

   10.1 **Entire Agreement.** The Parties understand and agree that this Agreement constitutes the entire Agreement of the Parties with regard to the subject matter herein, and it SUPERSEDES any and all prior and contemporaneous negotiations, understandings, and agreements regarding the same subject matter. The Parties each represent and warrant that no promise or inducement has been offered or made except as set forth herein, and no representations, oral or written, are being relied upon by any party in executing this Agreement, other than the express representations contained herein. This Agreement cannot be changed, amended, supplemented, or terminated except by a written agreement executed by both Parties.

   10.2 **Attorneys' Fees.** In connection with any dispute arising under this Agreement, the prevailing party will be entitled to recover its attorneys' fees and court costs.

   10.3 **No Assignments/Ownership of Claims**. No party to this Agreement has assigned, transferred, or conveyed any of the rights, allegations, assertions, causes of action, claims, contentions, controversies, demands, disputes, or damages disposed of by this Agreement. The Parties expressly acknowledge ownership of all claims released by this Agreement and warrant they are not aware of any other interest or subrogated interest owned, acquired, or claimed by any third party.

   10.4 **Capacity to Execute**. The Parties represent that they have the sole and exclusive right and full capacity to execute this Agreement.

   10.5 **Applicable Law and Severability**. The parties agree that the terms of this Agreement will be governed and construed in accordance with the laws of the State of Texas without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. The parties further agree that should any part of this Agreement be declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the parties intend the legality, validity, and enforceability of the remaining parts will not be affected thereby, and said illegal, invalid, or unenforceable part

will be deemed not to be a part of the Agreement.

10.6   **Notice.**  Any notice to be given to Employer hereunder will be deemed sufficient if addressed to Employer in writing and hand-delivered or mailed by certified mail to _____. Any notice to be given to Employee hereunder will be deemed sufficient if addressed to Employee in writing and hand-delivered or mailed by certified mail to Employee at _____. Either party may designate a different address by giving notice according to this section.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**EMPLOYER:**

ASSOCIATION OF INDEPENDENT MORTGAGE EXPERTS,
A Michigan non-Profit Corporation



By: _____   Date: January __, 2024
     Marc Summers, President
     Its authorized representative

1/16/2024

**EMPLOYEE**:



By: _____   Date: January __, 2024
     Katherine Sweeney

1/16/2024