IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **KATHERINE SWEENEY**,  *Plaintiff,*  v.  **ASSOCIATION OF INDEPENDENT MORTGAGE EXPERTS, UNITED WHOLESALE MORTGAGE, LLC, and SARAH DECIANTIS**  *Defendants.* | Case No. 4:25-cv-00392-O |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Katherine Sweeney ("**Plaintiff**" or "**Sweeney**") now files this, her First Amended Complaint against Defendants Association of Mortgage Experts, United Wholesale Mortgage, LLC, and Sarah DeCiantis and for cause would show:

### 1 | PARTIES

1.1   Plaintiff Katherine Sweeney ("**Sweeney**") is an individual residing in Tarrant County, Texas.

1.2   Defendant Association of Independent Mortgage Experts ("**AIME**") is a Michigan non-profit corporation that has appeared before the Court for all purposes. Accordingly, Defendant AIME may be served by and through its counsel of record.

PLAINTIFF'S FIRST AMENDED COMPLAINT | PAGE 1

1.3     Defendant United Wholesale Mortgage, LLC, is a Michigan limited liability company that has done business in the State of Texas, all within the meaning of Sections 17.041, *et. seq.,* of the Texas Civil Practice & Remedies Code. The causes of action stated in this Petition arose out of Defendant's business in Texas, and assumption of jurisdiction by the courts of Texas does not offend traditional principles of fair play and substantial justice. *See*, TEX. CIV. PRAC. & REM. CODE § 17.042(2).

1.4     Defendant United Wholesale Mortgage, LLC, is authorized to do business in Texas and is registered with the Texas Secretary of State. Accordingly, Defendant United Wholesale Mortgage, LLC, can be served by and through its registered agent for service of process in Texas, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas TX 75201.

1.5     Defendant Sarah DeCiantis is an individual residing in the state of Michigan, who has done business in the State of Texas, all within the meaning of Sections 17.041, *et. seq.,* of the Texas Civil Practice & Remedies Code. The causes of action stated in this Petition arose out of Defendant's business in Texas, as defined by TEX. CIV. PRAC. & REM CODE § 17.042, and assumption of jurisdiction by the Courts of Texas does not offend traditional principles of fair play and substantial justice. Said Defendant has done business in Texas but does not maintain a regular place of business in Texas and has not maintained or designated resident agents for service in this state and, therefore, service of process should be made upon Defendant's statutory agent for service, the Secretary of State of Texas, who should forward the process according to law by certified mail, return receipt requested, to the address identified for said Defendant.

1.6     Service can be had on Defendant DeCiantis via the Court's long-arm jurisdiction by service on the Texas Secretary of State, for service by the Texas Secretary of State, via certified mail, return receipt requested, upon said Defendant at her home office address, Sarah DeCiantis, ██████████████████████████████.

## 2 | DIVERSITY JURISDICTION

2.1     This Court has subject matter jurisdiction of this cause of action under 28 U.S.C.§1332(a) as there is complete diversity of citizenship among the parties. Plaintiff Sweeney is a citizen of the state of Texas, and the Defendants maintain citizenship in the state of Michigan. Furthermore, the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

2.2     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because all or a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

## 3 | FACTUAL BACKGROUND

3.1     AIME is a nationwide non-profit trade organization for mortgage brokers, and Marc Summers ("**Summers**") has served as AIME's President and a Director at all pertinent times. Defendant United Wholesale Mortgage, LLC ("**UWM**"), is a title sponsor of AIME. Defendant Sarah DeCiantis ("**DeCiantis**"), serves as the Executive Vice-President and Chief Marketing Officer of UWM.

3.2     In February 2018, Summers and Anthony Casa ("**Casa**") formed AIME at UWM's direction with Casa serving as AIME's initial Chairman. In January 2020, Casa and Summers, serving as executive leaders of AIME, hired Plaintiff Sweeney to work as AIME's

Executive Vice-President of Strategy. At that time, all parties, including Casa and Summers, were aware of Sweeney's minority ownership in BAB Management, LLC, f/k/a Brokers are Better, LLC ("**BAB**"). Indeed, Casa had founded BAB in July 2019 with Sweeney and two other partners. After forming BAB, Casa actively recruited Sweeney and authorized her employment with AIME that commenced in January 2020. A few months later, after having been named as a defendant in two different lawsuits, Casa stepped back from his public role at AIME, and Summers and Sweeney worked to keep AIME afloat. AIME subsequently promoted Sweeney to CEO when, in December 2020, Summers and Casa, both still serving as representatives of AIME, directed Sweeney to negotiate directly with DeCiantis for salary and bonus to become CEO of AIME. In January 2021, AIME issued a press release approved by Summers and DeCiantis publicly announcing Sweeney as CEO of AIME. Sweeney served as CEO of AIME from her office in Dallas, Dallas County, Texas, and then Grapevine, Tarrant County, Texas.

3.3     During the years 2021 and 2022, AIME's financials improved dramatically as a result of Sweeney's leadership in launching a paid membership structure and shepherding exponential growth of sponsorships and fundraising. Nonetheless, during that time frame, DeCiantis and UWM's principal, Mat Ishbia ("**Ishbia**"), began pressuring Sweeney and Summers via text messages, phone calls, and emails to behave in ways that directly benefited UWM, essentially seeking for AIME to operate as an extension of UWM and prohibiting the promotion of competing wholesale lenders.

3.4     Since the time that Sweeney had been affiliated with AIME, Summers worked solely with AIME's outside accountant to handle tax preparation and federal filings. As such,

Summers never granted Sweeney access to AIME's QuickBooks, bank accounts, HR or payroll platforms, or credit card statements. However, in the fall of 2022, Summers granted AIME's Senior Vice-President of Development (the "**SVP**") access to AIME's QuickBooks to prepare AIME's 2023 budget. Upon review of QuickBooks, the SVP discovered such financial disarray that she recommended to Sweeney that AIME hire an outside review.

3.5    The SVP and Sweeney thereafter hired an accountant from an outside firm to clean up AIME's financial bookkeeping and to perform an expense audit, focusing on financials for the year 2022 forward. In July 2023, the auditor notified the SVP of definitive embezzlement by an employee who had used AIME funds to pay her mortgage [to UWM] for over twelve months, including a payment that had been made in 2023. That same employee was alleged to have abused a company credit card by making personal purchases for months.

3.6    When Sweeney advised Summers of the employee's embezzlement in the summer of 2023, Summers admitted that he had been aware of the abuses and that he had asked the employee to stop the conduct, but Summers also acknowledged that he had not removed the employee's access to bank accounts or credit cards nor had the employee been terminated. Sweeney told Summers he needed to immediately fire the employee and that he had less than 48 hours to do so. Summers pushed back, delaying terminating the employee. Summers committed to putting the employee on a repayment plan, of which AIME and Summers never enforced or collected. Sweeney notified DeCiantis of the situation, advising that the employee needed to be let go immediately and that Summers needed to be removed from AIME. DeCiantis responded that Summers would not now, nor ever, be removed from AIME.

3.7     On August 31, 2023, Sweeney wrote to DeCiantis, requesting UWM and DeCiantis's support in immediately implementing changes to confirm AIME's independence from UWM. Specifically, Sweeney requested UWM's commitment to (i) sponsor AIME contingent only upon AIME's value to UWM as a membership organization with numerous sponsors, not making the sponsorship contingent upon UWM's ability to dictate AIME's activities; (ii) support AIME's relief of Summers from involvement in any operational aspects of AIME, including finance, HR, and team management [Sweeney proposing nonetheless that Summers could continue in an unpaid position as the President of Membership provided that UWM directly fund Summer's additional role as a BAB Facebook moderator responsible specifically for discussions involving or related to UWM]; (iii) acknowledge the AIME CEO's authority and freedom to enter into contractual agreements with those in the broker community that align with AIME's values as a membership organization supporting the entire broker community; and (iv) support AIME's establishment of a robust Board of Directors comprised of representatives from across the broker channel and revising AIME's by-laws to bring them into compliance with established best practices for non-profit membership organizations.

3.8     DeCiantis responded that UWM would agree to only two of the four requested elements and that Sweeney needed to either be content with that or leave.  In September of 2023, Sweeney notified DeCiantis and Summers that she was resigning due to concerns with unethical and possibly illegal activity within AIME.  That same month, DeCiantis notified Sweeney that Ishbia and UWM had selected Jonathon Haddad ("**Haddad**") as the next CEO of AIME. Sweeney expressed concerns about the hiring to both Summers and DeCiantis, but

she was directed that she had no authority in the matter. In the following six months, Sweeney worked with the transition team that included Summers, Haddad, and DeCiantis to provide budget forecasts, employee recommendations, and upcoming large contract renewals.

3.9    Indicative of UWM's control of AIME, DeCiantis negotiated the terms of Sweeney's departure from AIME, ostensibly on AIME's behalf but at UWM's direction. Summers reviewed and negotiated the terms on AIME's behalf as well. In mid-January 2024, Sweeney prepared and DeCiantis reviewed and approved, including revising the title of same, a Transition Agreement and Mutual Release (the "**Transition Agreement**"), pursuant to which Sweeney resigned her employment as CEO with AIME effective March 31, 2024. When UWM, through DeCiantis, had approved of the final form of the Transition Agreement, Summers signed the Transition Agreement on behalf of AIME. At the time, Summers was AIME's only disinterested Director.

3.10   In the Transition Agreement, AIME acknowledged that Sweeney had earned her 2023 Bonus in the amount of $240,000 ("**2023 Bonus**") and agreed to pay Sweeney her 2023 Bonus no later than February 29, 2024. AIME further agreed to pay Sweeney $240,000 in severance payments via twelve monthly installments of $20,000 each, commencing April 15, 2024, and continuing through March 15, 2025 (collectively, the "**Severance Payment**").

3.11   AIME failed to pay Sweeney her 2023 Bonus before the February 29, 2024 payment deadline as required by the Transition Agreement. When Sweeney inquired about the bonus in March of 2024, Summers informed her that UWM had directed AIME not to allocate any funds to bonuses. Although Summers later emailed Sweeney stating, "Just to make sure we are clear, we have every intention on paying this [the 2023 Bonus]," AIME did not

thereafter pay the 2023 Bonus as promised. Upon additional inquiry from Sweeney, Haddad stated via text to Sweeney [and Summers] on two different occasions "We are going to honor your agreement" and "you will be paid out what you are owed." On information and belief, AIME's decision not to pay the 2023 Bonus was made at UWM's direction, despite the fact UWM—through DeCiantis—had negotiated and approved the form of the Transition Agreement that Summers executed on AIME's behalf.

3.12  Similarly, with respect to the required Severance Payment, AIME made nine of the twelve required monthly installment payments but then failed to pay the final three installments, all of which are now overdue, leaving $60,000 due and owing on the Severance Payment. AIME stopped making monthly payments and stopped responding to Sweeney's inquiries the same month Sweeney was hired by UWM's largest wholesale lending competitor.

3.13  Because AIME owed Sweeney $300,000 that it was refusing to pay, Sweeney hired an attorney to demand that AIME make all payments required by the Transition Agreement. On January 31, 2025, AIME responded, acknowledging Sweeney's January 27th demand letter but advising that AIME was "investigating" the Transition Agreement and that, while its investigation was pending, AIME would not be making any payments to Sweeney. Indeed, as of the date of this pleading, AIME has not paid Sweeney the $240,000 2023 Bonus payment that AIME has acknowledged Sweeney earned and which AIME promised to pay, and AIME has not paid Sweeney the $60,000 remaining balance on the Severance Payment.

3.14  On information and belief, AIME's failure to honor its financial obligations under the Transition Agreement was due primarily to the interference of Defendants UWM and DeCiantis. Specifically, Sweeney believes that DeCiantis and UWM have directed AIME

not to make any additional payments to Sweeney and have threatened to withhold funds from AIME or take other retributive action if AIME does not follow UWM's directive. Moreover, because UWM and DeCiantis had played an instrumental role in the negotiation of the Transition Agreement, they were aware that Sweeney resided in Texas, and they would have further known that by directing AIME to breach the Transition Agreement, they would cause Sweeney to sustain financial injury in Texas.

3.15 As a result of Defendants' actions as set forth above, Plaintiff Sweeney now brings this suit charging Defendant AIME with breach of contract and Defendants DeCiantis and UWM with tortious interference with contractual relations and seeks an award of her actual damages, together with exemplary damages to be determined by the jury, court costs, attorneys' fees, and prejudgment interest.

## 4 | INCORPORATION OF FACTS BY REFERENCE

4.1 The allegations set forth in the Background Facts section above are incorporated by reference as to each cause of action and theory of liability asserted herein, all of which are alleged in the alternative.

## 5 | BREACH OF CONTRACT

i. *2023 Bonus Payment*

5.1 AIME entered into the Transition Agreement by which AIME acknowledged Sweeney had earned her 2023 Bonus in the amount of $240,000 and agreed to pay Sweeney her 2023 Bonus no later than February 29, 2024. AIME breached the Transition Agreement by failing to pay Sweeney her 2023 Bonus. AIME's failure to pay the 2023 Bonus is an

unexcused breach of the Transition Agreement for which Sweeney is entitled to recover damages of $240,000, plus interest and attorneys' fees.

    *ii.*    <u>*Severance Payment*</u>

5.2    Similarly, AIME entered into the Transition Agreement by which AIME agreed to pay Sweeney a Severance Payment totaling $240,000. AIME agreed to pay Sweeney the total amount of the Severance Payment via twelve monthly installment payments of $20,000, commencing April 15, 2024, and continuing through March 15, 2025. AIME partially performed, making nine of the twelve payments; however, AIME has breached the Agreement by failing to make the final three payments. AIME's failure to pay the final three installments is an unexcused breach of the Transition Agreement for which Sweeney is entitled to recover actual damages of $60,000, plus attorneys' fees, interest, and court costs.

## 6 | TORTIOUS INTERFERENCE

6.1    Pleading further, and on information and belief, Defendants UWM and DeCiantis have tortiously interfered with the Transition Agreement by directing AIME to breach the Transition Agreement and by threatening to withhold funds in order to coerce AIME's compliance with its directives. Said interference has proximately caused Plaintiff Sweeney to sustain injury in Texas in the amount of at least $300,000, comprised of her unpaid 2023 Bonus and that portion of her Severance payment that AIME has failed and refused to pay.

## 7 | CONDITIONS PRECEDENT

7.1    All conditions precedent to Plaintiff's recovery have occurred or have been satisfied. See, FED. R. CIV. P. 9(c).

# 8 | ATTORNEY'S FEES

8.1     Due to Defendant AIME's actions as specifically set forth herein, Plaintiff has been required to retain an attorney to institute and prosecute this action. The Transition Agreement provides that, in the event of a dispute arising from the Transition Agreement, the prevailing party will be entitled to attorneys' fees and court costs. Accordingly, Plaintiff seeks recovery of her reasonable and necessary attorneys' fees from Defendant AIME pursuant to the Transition Agreement and Chapter 38 of the Texas Civil Practice & Remedies Code.

# 9 | PRAYER

WHEREFORE, Plaintiff Katherine Sweeney respectfully requests the Court grant Plaintiff an award of all actual damages requested herein, together with attorneys' fees, pre-judgment interest, post-judgment interest, court costs, and any other damages or relief to which Plaintiff may be entitled.

Respectfully submitted,

**SULLIVAN & COOK, LLC**

s/    M. Jason Ankele
M. Jason Ankele, *of counsel*
State Bar No. 00786989
Jeff Cook
State Bar No. 04734495
William Cook
State Bar No. 24125182
Adam R. Barela
State Bar No. 24027138
600 E. Las Colinas Boulevard, Suite 1300
Irving, Texas 75039 | Phone: (214) 520-7494
jankele@sullivancook.com
jcook@sullivancook.com
wcook@sullivancook.com
abarela@sullivancook.com
*Attorneys for Plaintiff Katherine Sweeney*

## CERTIFICATE OF SERVICE

I certify this document was served on all counsel of record via the Court's ECF System on October 28, 2025.

                                             /s/   M. Jason Ankele
                                                    M. Jason Ankele